WICKER, J.
hln this appeal, defendants, Depositors Insurance Company, Rubber & Specialties, Inc., and Lance M. Cook, sought review of the district court’s October 11, 2016 judgment, reflecting a twelve-person jury’s awards of general and special damages to plaintiff, Jasmine Raymond, for injuries she sustained as a result of a three-car motor vehicle collision on Interstate 10. Prior to submission of the case to the jury, the district court granted plaintiffs motion for directed verdict on the issue of liability for the motor vehicle, collision. Thus, the only issues before the jury were medical causation for plaintiffs injuries and damages. As discussed below, appellants, Depositors Insurance Company, Rubber & Specialties, Inc,, and Lance M. Cook, have filed a motion to dismiss this appeal. Upon consideration, we grant appellants’ motion and dismiss the appeal.
FACTUAL AND PROCEDURAL BACKGROUND

The Accident

On June 27, 2014, defendant, Lance Cook, was in heavy morning traffic on Interstate 10, heading eastbound, immediately before the Interstate 10/Interstate 610 split in Jefferson Parish. At the time, Mr. Cook was returning from a business trip for his employer, Rubber <& Specialties, Inc., and he was driving a truck insured by Depositors Insurance Company. Mr. Cook admitted to the responding officer at the scene and to the jury at trial that he looked down at his phone to check his GPS and made impact with the rear-end of plaintiffs vehicle at the same time as he looked up. The impact sent plaintiffs vehicle into the car in front of her vehicle, such that plaintiffs vehicle sandwiched between the two cars. Mr. Cook testified at trial that plaintiff was “visibly shaking” when he walked 'around to the side of her vehicle to check on her. Following this accident, as the record reflects, plaintiff— who was twenty-four-years-old at the time of the accident and who had no prior history of back or neck problems—underwent numerous procedures and I ^surgeries over the next two years in an effort to alleviate severe pain she experienced after the accident.

*872
The Petition and Pre-Trial Order

On January 13, 2015, plaintiff filed a petition seeking damages for, among other things, past and future physical pain and suffering, past and future mental pain and suffering, past and future medical expenses, loss of past and future earnings and earning capacity, permanent disability, and loss of past and future enjoyment of life, arising out of “severe and disabling injuries” she sustained in the June 27, 2014 accident. Plaintiffs petition named three defendants: the driver, Mr. Cook; the driver’s employer, Rubber & Specialties, Inc.; and the insurer of the driver’s truck, Depositors Insurance Company.[1] On February 20, 2015, defendants filed an answer in which defendants denied liability and alleged as an affirmative defense that plaintiff failed to mitigate her damages.
On January 26, 2016, the district court issued its pre-trial order, directing the parties, among other things, to prepare a consolidated pre-trial memorandum—including “[a] concise summary of the facts or contentions made by all parties” and “[a] list of contested issues of fact and law, specified with particularity”—no later than seven days (excluding weekends and holidays) prior to the August 25, 2016 pre-trial conference. The pre-trial order also required that “[fjinal expert or contradictory/rebuttal expert reports shall be exchanged no later than ninety (90) days before Trial.”
| ¡Pre-Trial Litigation and Jury Trial
On August 16, 2016, plaintiff and defendants filed their joint pre-trial memorandum in which defendants for the first time raised as a contested issue the “Applicability of ‘no pay, no play' [La. R.S. 32:866], as plaintiff was an unlicensed driver in her vehicle at the time of the incident.” Likewise, in providing a brief summary of plaintiffs “medical reports, including extent of injury, length of treatment, disability factor and medical expenses,” plaintiff cataloged the numerous surgeries and procedures she had undergone thus far and included the then-recent August 5, 2016 diagnosis from her treating physician, Dr. Rodriguez, of a recurrent disc herniation at L4-5 with right leg radiculopathy, reporting as his recommendation that “she is a candidate for a lumbar fusion surgery in the future.”
On September 8, 2016, defendants filed their “Expedited Motion to Continue Trial and to Compel Updated IME.” Defendants’ expert, Dr. Andrew Todd, performed an independent medical examination (“IME”) on plaintiff on November 20, 2015, after which he concluded plaintiff had suffered a soft-tissue injury. In their motion, defendants argued that, since that IME, plaintiffs medical condition did not progress in “a normal manner.” Rather, defendants maintained that, following her March 31, 2016 surgery, plaintiff experienced a “new medical condition,” necessitating in the interest of fairness a continuance of trial and an updated IME. In response, plaintiff rejected defendants’ assertion that her recurrent disc herniation was a “new medical condition.” Rather, she argued that Dr. Rodriguez’s recommenda *873 tion of lumbar fusion surgery constituted the next measure in her continued treatment for her original disc herniation injury. Contending that defendants had not shown good cause for an updated IME, plaintiff represented that, on August 17, 2016, she provided defendants with new MRI films for their expert’s review and with an updated life care plan from plaintiffs expert in vocation assessment and life care planning analysis, Aaron | ¿Wolfson, Ph.D., reflecting Dr. Rodriguez’s opinion that plaintiff would need two lumbar fusion surgeries over the course of her lifetime and reflecting the estimated costs of these surgeries. Accordingly, she urged the district court to deny defendants’ motions. On September 15, 2016, five days before the beginning of trial, the district court denied defendants’ motions.
Related to Dr. Rodriguez’s fusion surgery recommendation, defendants sought to limit the testimony of two of plaintiffs nonmedical experts who would testify about the cost of the additional surgeries and the present value of those surgeries— the surgery she would need immediately and the second surgery she would need over the course of her lifetime. On September 15, 2016, the same day that the district court denied defendants’ motions to continue and for an updated IME, defendants filed their “Motion to Strike Late Expert Testimony,” seeking to limit the testimony of Aaron Wolfson, plaintiffs expert in vocational assessment and life care planning analysis, and of his brother, Shael Wolfson, plaintiffs expert in the field of forensic economics.[2] According to defendants, despite the pre-trial order’s June 21, 2016 deadline for submitting final expert reports, plaintiff submitted supplemental reports from Aaron Wolfson on August 16, 2017, and from Shael Wolfson on August 22, 2016 and September 13, 2016.[3],[4] Defendants sought to limit the substance of their testimony to the information contained only in the reports submitted to defendants prior to the June 21, 2016 deadline. Prior to the beginning of trial, the district court held a hearing on defendants’ motion. Plaintiff argued that her medical experts would testify as to her need for these Usurgeries and could price the surgeries themselves, regardless of whether district court permitted the nonmedical experts to testify.[5] Reviewing the fluctuations in her response to treatment, plaintiff emphasized that the difference between the present value of the future medical expenses reflected in Shael Wolfson’s September 2015 report and in his August 2016 report is roughly $121,000 (i.e., the difference between approximately $489,000 and approximately $610,000).[6] Ultimately, the district *874 court denied defendants’ motion, finding “that the reports are more just updated as to her condition, and it’s not a significant-change.”
Prior to trial, on September 1, 2016, plaintiff filed a “Motion to Strike ‘No Pay No Play1 Affirmative Defense” [sic], arguing that defendants could not raise this affirmative' defense because they did' not plead it in their answer and asserting that, in any event, the affirmative defense is not applicable in this matter because the vehicle plaintiff drove at the time of the collision was insured. Defendants opposed plaintiffs motion to strike. Prior to beginnings voir dire on the first day of trial, September 19, 2016, the district court took up defendants’ motion, Considering defendants had never sought in discovery or subpoenaed a copy of the policy insuring, the vehicle plaintiff drove at the time of-the accident,, the district court found that it could look at -this issue at any time and decided to defer - the matter until after' trial.
After three days of trial testimony,' the parties rested. After the district court granted plaintiff’s motion for directed verdict on-the issue of liability, the jury retired to consider the questions of medical causation and damages. Following deliberations, the jury returned a verdict in favor of plaintiff, awarding her (1) la$10,000 for past physical pain and suffering; (2) $190,000 for future physical pain and suffering; (3) $10,000 for past mental anguish; (4) $190,000 for future mental anguish; (5) $10,000 for past loss of enjoyment of life; (6) $190,000 for future’loss of enjoyment of life; (7) $114, 368.87 for . past medical expenses; (8) $610,125 for future medical-expenses; (9) $55,000 for past lost wages; (10) $30,000 for future lost wages and loss of earning capacity; and (11) $172,916 for disability. On October 11, 2016, the district court issued a judgment incorporating the jury’s verdict.
On October 18, 2016, defendants filed their motion for new trial. Although the record does not disclose any post-trial motion related to defendants’ asserted “nó pay, no play” affirmative defense, defendants mention in passing that the court “has yet to rule on the application off‘no pay, no play,’ as the plaintiff was to provide the Court with the policy of insurance for the vehicle.” The district court denied defendants’ motion for new trial the same day defendants filed it.
On November 9, 2016, defendants filed a motion for suspensive appeal of the district court’s October 11, 2016 judgment. The district court granted defendants’ motion on November 14, 2016.
DISCUSSION
Defendants alleged four assignments of error on appeal. First, defendants argued that the district court erred in denying their “Motion to Strike Late .Expert Testimony,” -permitting Aaron Wolfson and Shael Wolfson to testify to information contained in the supplemental reports plaintiff submitted after the June 19, 2016 discovery deadline. Second, defendants contended the district court erred in denying defendants’. “Motion, to Continue Trial and to Compel Updated IME” as Dr. Rodriguez’s surgery recommendation approximately one month prior to trial necessitated both a' continuance and an updated IME. Third, defendants maintained that the jury erred in awarding plaintiff future medical expenses in the |7amount of $610,125, as this amount was not supported by the record. Finally, defendants argued that this court should remand this matter to the district court for consideration of the applicability of La. R.S. 32:866, the “no pay, no play” statute.
On September 6, 2017,- the afternoon prior to oral argument, appellants, Deposi *875 tors Insurance Company, Rubber & Specialties, Inc., and Lance M. Cook, filed a motion to dismiss their appeal. Therefore, we decline to consider the assignments of error raised on appeal and hereby grant appellants’ motion to dismiss their appeal.
CONCLUSION
Accordingly, for the foregoing reasons, this appeal is dismissed. "
APPEAL DISMISSED

. The record contains the following trial stipulations, signed by both parties:
1. Defendant, Lance Cook, was in the course and scope of his employment with Rubber & Specialties, Inc. on the date and time of the accident that forms the basis of this lawsuit.
2. At the time of the accident which forms the basis of this lawsuit, Defendant, Depositor's [sic] Insurance Company, provided a policy of insurance, which provided coverage to Rubber & Specialties, Inc. and its employee, Lance Cook, for the accident which forms the basis of this lawsuit.
At trial, plaintiff’s counsel read these stipulations into the record.

. Both Aaron Wolfson and Shael Wolfson have earned doctorates in their respective fields. In the interest of clarity, we do not use the title "doctor” to refer to either gentleman in order to minimize confusion.

. Defendants' counsel represented at the hearing that Shael Wolfson submitted two separate reports on September 13, 2016: "One is the wage claim. One is the future med claim. They're both dated—two separate reports dated that date.”

. Aaron Wolfson testified at trial that he submitted two supplemental reports, as well: one in August 2016 and one on September 12, 2016.

. Indeed, Aaron Wolfson testified that the pricing he used came from Dr. Rodriguez. According to Dr. Rodriguez, his office manager "usually.. .talks to the hospital and puts it all together,” and his office will then give those figures to the life care planning analyst.

. None of these reports are contained in the record. Thus, as to the contents of the reports, we must rely on the parties' representations to the district court and on the district court’s observations as it reviewed the reports and discussed the matter with the parties at the hearing.